**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION, COLUMBUS, OHIO**

| | |
|---|---|
| TRAVIS RYAN<br>5742 Laura Lane<br>Hilliard, Ohio 43026<br><br>and<br><br>MEGAN MALONE<br>5742 Laura Lane<br>Hilliard, Ohio 43026<br><br>     Plaintiffs,<br><br>v.<br><br>FLAGSTAR BANK, FSB<br>c/o Statutory Agent: CSC-Lawyers<br>Incorporating Service<br>2900 West Road, Suite 500<br>East Lansing, Michigan 48823<br><br>     Defendant. | CASE NO.: 2:23-cv-484<br><br>JUDGE:<br><br>MAGISTRATE:<br><br><br>**JURY DEMAND ENDORSED HEREIN** |

<u>COMPLAINT FOR MONEY DAMAGES AND OTHER RELIEF</u>

The following allegations are based upon the personal knowledge of Plaintiff Travis Ryan ("Plaintiff Ryan") and Plaintiff Megan Malone ("Plaintiff Malone"), the investigation of counsel, and information and belief.  Plaintiff Ryan and Plaintiff Malone (together, "Plaintiffs"), through counsel, allege as follows:

**I.     INTRODUCTION**

1. Plaintiffs, together but unmarried, have owned the real property in controversy subject to a mortgage since 2018.  At that time, Plaintiff Ryan was still married to his ex-wife, Taijuana Ryan, who signed the mortgage solely to release her dower interest.

1

In February 2020, Plaintiff Ryan's divorce was finalized. Shortly thereafter, Plaintiff Ryan suffered a temporary reduction in his income due to the COVID-19 pandemic. Plaintiff Ryan and Plaintiff Malone quickly sought assistance from their mortgage servicer, Flagstar Bank, FSB ("Defendant"). Defendant approved Plaintiffs for a loan modification, but incorrectly included the name of Defendant Ryan's ex-wife in the paperwork. Plaintiffs immediately informed Defendant that they accepted the terms of the offer, but needed Defendant to correct its error in the paperwork and send the corrected paperwork to Plaintiffs for immediate execution. Defendant assured Plaintiffs that they would receive corrected paperwork shortly. Defendant never sent the corrected paperwork. Instead, Defendant sent Plaintiffs on an unnecessary wild goose chase of document collection and phone tag before providing them with multiple offers that were significantly more burdensome than the original offer. Plaintiffs were forced to seek counsel, and to send a Qualified Written Request ("QWR") to Defendant. As of the date of this filing, Defendant has failed to adequately respond to the QWR. Defendant has therefore violated provisions of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, *et seq.*, and Regulation X, 12 C.F.R. § 1024, as further detailed below.

## II. PRELIMINARY STATEMENT

2. Plaintiffs incorporate all other paragraphs in this Complaint by reference as though fully rewritten herein.

3. Plaintiffs institute this action for actual damages, statutory damages, attorney fees, and the costs of this action against Defendant, for violations of:The Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, *et seq.*, including but not

limited to:12 U.S.C. § 2601; and12 U.S.C. § 2605(e)(2); andRegulation X, 12 C.F.R. § 1024, including but not limited to:12 C.F.R. § 1024.41;12 C.F.R. § 1024.41(b)(1);12 C.F.R. § 1024.41(b)(2)(i)(B);12 C.F.R. § 1024.41(b)(2)(i)(A);12 C.F.R. § 1024.41(c)(2)(iv);12 C.F.R. § 1024.41(c)(4)(i);12 C.F.R. § 1024.36;12 C.F.R. § 1024.36(d);12 C.F.R. § 1024.35(e); and12 C.F.R. § 1024.35(e)(1).**JURISDICTION**

4. Plaintiffs incorporate all other paragraphs in this Complaint by reference as though fully rewritten herein.

5. This Court has subject matter jurisdiction over Count One under RESPA, 12 U.S.C. § 2614, and 28 U.S.C. §§ 1331 and 1337.

6. This Court has subject matter jurisdiction over Count Two under RESPA, 12 U.S.C. § 2614, and 28 U.S.C. §§ 1331 and 1337.

7. This Court has personal jurisdiction over Defendant, because Defendant transacts business within this District, the loan at issue was incurred within this District, and the property which is the subject of the loan at issue is located within this District. *International Shoe v. Washington*, 326 U.S. 310 (1945).

8. Venue is proper in accordance with 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district, and the property is located in this judicial district.

IV. **PARTIES**

9. Plaintiffs incorporate all other paragraphs in this Complaint by reference as though fully rewritten herein.

10. Plaintiff Ryan and Plaintiff Malone are natural persons currently residing within this Court's jurisdiction at 5742 Laura Lane, Hilliard, Ohio 43026.

11. At all relevant times, Plaintiffs were and are each a "person" within the meaning of RESPA at 12 U.S.C. § 2602(5).

12. At all relevant times, Plaintiffs were and are each a "borrower" within the meaning of RESPA.

13. Defendant is a company organized under the laws of the United States of America, with its principal place of business in Michigan.

14. At all relevant times, Defendant was and is a "person" within the meaning of RESPA, 12 U.S.C. § 2602(5).

15. At all relevant times, Defendant was and is a loan "servicer" of Plaintiffs' "federally related mortgage loan" within the meaning of those terms in RESPA, respectfully, at 12 U.S.C. §§ 2605(i)(2) and 2602(1).

16. At all relevant times, Defendant was engaged in "servicing" within the meaning of RESPA, 12 U.S.C. § 2605(i)(3).

**V.     FACTUAL ALLEGATIONS**

17. Plaintiffs incorporate all other paragraphs in this Complaint by reference as though fully rewritten herein.

18. Each action or inaction alleged herein against Defendant, is also an allegation of action or inaction, by Defendant's agents, predecessors, successors, employees, contractors, assignees, assignors, and servicers, as appropriate.

4

19. On or around October 23, 2018, Plaintiff Ryan and Plaintiff Malone financed the residential real property located at 5742 Laura Lane, Hilliard, Ohio 43026, with a note secured by a mortgage (collectively, the "Mortgage Loan").

20. At the time the property was financed, Plaintiff Ryan was separated from but still married to his now ex-wife, Taijuana Ryan.

21. Taijuana Ryan did not sign the Note.

22. Taijuana Ryan was not a borrower under the Mortgage Loan.

23. Taijuana Ryan signed the mortgage solely to release her dower interest.

24. Plaintiff Ryan and Plaintiff Malone made timely payments under the Mortgage Loan throughout 2018 and 2019.

25. On or around February 27, 2020, Plaintiff Ryan's divorce from Taijuana Ryan was finalized.

26. Around the same time of the divorce judgment, the COVID-19 virus began to take hold of the nation.

27. Within a month from the entry of Plaintiff Ryan's divorce, states around the country began issuing stay-at-home orders.

28. These stay-at-home orders adversely effected Plaintiff Ryan's ability to work.

29. As a result of these stay-at-home orders, Plaintiff Ryan suffered a significant reduction in income.

30. As a result of this reduction in income, Plaintiff Ryan and Plaintiff Malone requested assistance from Defendant.

31. In or around mid-2020, Plaintiffs entered into a forbearance plan regarding the Mortgage Loan.

32. Plaintiffs satisfactorily completed their forbearance plan.

33. At the conclusion of the forbearance plan in mid-2021, Plaintiffs requested a loan modification from Defendant.

34. On or around December 21, 2021, Defendant approved Plaintiffs for a loan modification (the "Loan Modification").

35. Plaintiffs intended to immediately accept the Loan Modification with an interest rate of 3.125%, a monthly mortgage payment of $2,405.16, an unpaid principal balance of $303,401.49, and a partial claim of $67,777.67.

36. However, Defendant erroneously included Taijuana Ryan, Plaintiff Ryan's ex-wife, on the Loan Modification agreement.

37. The deed and title reflect that Taijuana Ryan has no interest in the property.

38. Plaintiffs did not execute the documents with the incorrect party listed therein.

39. Rather, Plaintiffs immediately informed Defendant of this error in the paperwork.

40. Defendant's representatives quickly assured Plaintiffs that Defendant would address the issue and send Plaintiffs the corrected paperwork.

41. Defendant's representatives did not indicate to Plaintiffs that if they did not sign and return the incorrect paperwork, they would forfeit their ability to accept the Loan Modification.

42. Defendant's representatives did not indicate to Plaintiffs that Defendant would not provide them with the corrected paperwork for immediate execution, prior to the expiration of the Loan Modification offer.

43. Plaintiffs therefore agreed to wait for Defendant to send them the corrected paperwork for execution, rather than execution the incorrect paperwork with Defendant's errors included within.

44. For approximately two months, Defendant took no actions to address the issue or send corrected paperwork.

45. In or around early March 2022, Defendant informed Plaintiffs that they were required to resubmit all previously submitted materials in order to be considered for a loan modification, despite assuring Plaintiffs that the corrected paperwork for the original Loan Modification would be forthcoming.

46. In an attempt to expedite the modification process, Plaintiffs resubmitted the requested paperwork.

47. On or around April 11, 2022, Plaintiffs received a new loan modification offer (the "April Offer").

48. The April Offer contained significantly different terms than the previous Loan Modification, which Defendant had sent to Plaintiffs in December 2021.

49. The April Offer had an interest rate of 4.75%, monthly mortgage payment of $2,796.52, an unpaid principal balance of $320,386.23, and a partial claim of $58,142.67.

50. Additionally, the April Offer also failed to remove Taijuana Ryan's name from the paperwork.

51. Plaintiffs, again, immediately informed Defendant of its errors.

52. Defendant attempted to shift the blame to Plaintiffs, informing them that without another hardship letter and Plaintiff Ryan's divorce decree, Defendant would be unable to provide another loan modification offer.

53. Defendant had never requested Plaintiff Ryan's divorce decree, prior to receiving notification from Plaintiff Ryan for the second time, of Defendant's incorrect inclusion of Taijuana Ryan in Plaintiffs' paperwork.

54. In response, Plaintiffs immediately provided Defendant with Plaintiff Ryan's divorce decree.

55. On or around April 13, 2022, Plaintiffs provided Defendant with the rest of the requested information, including another hardship letter and the deed and title which demonstrated that Taijuana Ryan had no interest in the property.

56. Defendant continued to represent to Plaintiffs that it was addressing the issue.

57. On or around June 13, 2022, Miracle "Last Name Unknown" ("LNU"), an employee of Defendant, informed Plaintiffs that the review would take an additional four to six weeks.

58. On or around July 15, 2022, Plaintiffs called Defendant again to inquire as to the status of their application.

59. On or around this date, Michelle LNU, Defendant's employee, informed Plaintiffs that they were denied for the Streamline Flex loan modification, and that any protections to Plaintiff Ryan's and Plaintiff Malone's credit by way of the loss mitigation application had expired.

60. This was the first time that Plaintiffs received notice that their application was denied.

61. Michelle LNU requested that Plaintiffs resubmit all prior materials in another loss mitigation application.

62. Defendant provided Plaintiffs with a new application to submit.

63. Plaintiffs submitted the application on or about the end of July 2022; this was Plaintiffs' third application to Defendant.

64. On or around August 5, 2022, Plaintiffs called Defendant in another fruitless attempt to have the errors corrected.

65. On or around August 5, 2022, Darlene LNU assured Plaintiffs that she would take the issue to her managers to have it remedied.

66. Darlene LNU also requested that Plaintiffs submit another hardship letter to Defendant, which Plaintiffs did on or about early August 2022.

67. Shortly after the conversation with Darlene LNU, Plaintiff Ryan and Plaintiff Malone discovered that their credit scores had dropped by more than 100 points.

68. On or around August 12, 2022, Plaintiffs called Defendant to inquire as to the adverse effect on their credit scores.

69. On or around this date, Ladonne LNU informed Plaintiffs for the first time that the most recent paperwork they submitted on or about the end of July 2022, was incomplete.

70. Plaintiff Ryan, frustrated by Defendant's repeated misdirection, remained on the phone with Defendant until he had gathered and provided each and every document requested.

71. During this phone call, Ladonne LNU brought an unknown manager onto the conference call.

72. Both Ladonne LNU and the unknown manager stated that they could not find any documentation to support that Taijuana Ryan's name should have been on the documents from the outset.

73. On or about August 16, 2022, Defendant informed Plaintiffs that the documents they provided were received.

74. On or about August 16, 2022, Plaintiffs sent a QWR to Defendant, highlighting the errors discussed in this complaint.

75. After sending the QWR, Plaintiffs received another loan modification offer from Defendant on or around August 22, 2022 (the "August Offer").

76. The August Offer contained significantly different terms from the Loan Modification.

77. The August Offer had an interest rate of 5.375%, a monthly mortgage payment of $2,723.53, an unpaid principal balance of $320,386.23, and a partial claim of $77,796.50.

78. Defendant thus sent three different loan modification offers to Plaintiffs. Over time, each offer increased the interest charged, monthly payment required, and unpaid principal balance. In sum, the terms of these offers were as follows:

|  | ORIGINAL LOAN | LOAN MOD. NO.1 | LOAN MOD. NO.2 | LOAN MOD. NO.3 |
|---|---|---|---|---|
| **DATE SIGNED OR DATE OF OFFER** | October 23, 2018 | December 21, 2021 | April 2022 | August 22, 2022 |
| **ANNUAL INTEREST RATE** | 4.875% | 3.125% | 4.75% | 5.375% |
| **MONTHLY P&I PAYMENT** | $1,732.93 | $1,299.70 | $1,671.29 | $1,625.30 |

| | | | | |
|---|---|---|---|---|
| TOTAL MONTHLY PAYMENT, INCLUDING ESCROW ITEMS | $2,816.81 | $2,405.16 | $2,769.52 | $2,723.53 |
| TERM LENGTH IN YEARS | 30 Years | 30 Years | 30 Years | 40 Years |
| UNPAID PRINCIPAL BALANCE | $327,458.00 | $303,401.49 | $320,386.23 | $320,386.23 |
| PARTIAL CLAIM FOR H.U.D. 0% INTEREST SUBORDINATE NOTE | N/A | $67,777.67 | $58,142.67 | $77,796.50 |
| TOTAL P&I PAYMENTS | $623,856.48 | $467,891.10 | $601,663.04 | $780,141.88 |
| TOTAL INTEREST PAYMENTS | $296,398.48 | $164,489.61 | $281,276.81 | $459,755.65 |
| TOTAL PAYMENTS, INCLUDING PARTIAL CLAIM | $623,856.48 | $535,668.77 | $659,805.71 | $857,938.38 |
| CHANGE IN LOAN VALUE FROM ORIGINAL LOAN | N/A | DECREASE OF $88,187.71 | INCREASE OF $35,949.23 | INCREASE OF $234,081.90 |
| CHANGE IN LOAN VALUE FROM LOAN MOD. NO.1 | N/A | N/A | INCREASE OF $124,136.94 | INCREASE OF $322,269.61 |

79. Defendant's delay in fixing its errors in the paperwork for the Loan Modification provided to Plaintiffs in December 2021 now stands to increase Plaintiffs' annual interest rate by 2.25% and Plaintiffs' mortgage obligation by $322,269.61 over the life of the loan.

80. On or about September 7, 2022, Defendant responded to Plaintiffs' first QWR, informing Plaintiffs that it had removed Plaintiff Malone's name from the paperwork.

81. Defendant had no reason to remove Plaintiff Malone's name from the paperwork.

11

82. Defendant, rather, needed to remove Plaintiff Ryan's ex-wife, Taijuana Ryan, from Plaintiff Ryan's and Plaintiff Malone's paperwork.

83. Defendant's explanation in the QWR was not provided until after the August Offer expired.

84. Out of options, Plaintiffs retained counsel.

85. On or about September 21, 2022, Plaintiffs, through counsel, sent Defendant written correspondence ("The Second QWR") requesting information and noting errors, related to the servicing of the Mortgage Loan.

86. The Second QWR asked that Defendant provide the following:

    a. A copy of all written correspondence, call logs, servicing logs, or audio recordings related to Plaintiffs' application for a loan modification.

    b. A copy of all written correspondence, call logs, servicing logs, or audio recordings related to the loan, directed towards Plaintiff Malone.

    c. A transcript of all phone calls between Plaintiff Ryan and Defendant's employee, Miracle "Last Name Unknown," between June 1, 2022 and June 30, 2022.

    d. A transcript of all phone calls between Plaintiff Ryan and Defendant's employee, Michelle "Last Name Unknown," between July 1, 2022, and July 31, 2022.

    e. A transcript of all phone calls between Plaintiff Ryan and Defendant's employee, Darlene "Last Name Unknown," between August 1, 2022 and August 30, 2022.

    f. A transcript of all phone calls between Plaintiff Ryan and Defendant's employee, Ladonne "Last Name Unknown," between August 1, 2022, and August 30, 2022.

    g. A complete call log of conversations, including identifying information of Defendant's employees, with Plaintiff Ryan, regarding the loan modification, between November 1, 2022 and the present.

    h. A copy of all written correspondence, call logs, servicing logs, or audio recordings, related to the removal of Taijuana Ryan's name from the loan documents.

    i. A written statement and supporting documentation, explaining the procedures used in removing Taijuana Ryan's name from the loan documents.

    j. A written statement and supporting documentation, explaining the delay in removing Taijuana Ryan's name from the loan documents.

    k. A copy of all written correspondence, call logs, servicing logs, or audio recordings that include information relating to Defendant's efforts to evaluate Plaintiffs for loss mitigation options, including but not limited to any application or documents referencing potential loan modifications, HAMP modifications, deeds in lieu, short sales, or cash for keys.

87. The Second QWR also notified Defendant of errors related to the Mortgage Loan, including, but not limited to, the following:

    a. The difference in outstanding principal balance of loan.

    b. The difference in interest rate for each of the offers.

    c. Defendant's refusal to remove Taijuana Ryan's name from the paperwork.

88. Plaintiffs incurred legal fees and costs associated with preparing and mailing the Second QWR.

89. On or about October 25, 2022, Defendant responded to the Second QWR.

90. Defendant inadequately attempted to explain the discrepancies related to the interest rate and principal balance, but completely failed to address the error regarding the inclusion of an improper party on the paperwork.

91. Defendant also failed to adequately respond to the request for information.

92. Defendant asserted it had no obligation to produce "all written correspondence, call logs, servicing logs, or audio recordings related to the above loan, transcripts of all phone calls, written statements, and supporting documents," on the grounds that the request is "overbroad or unduly burdensome."

93. Defendant completely avoided the specific requests regarding identified employees.

94. Defendant completely avoided the specific requests to allow Plaintiff Ryan to identify the employees he spoke with over the phone.

95. Defendant completely avoided the specific requests for information limited to the loss mitigation determination.

96. Defendant completely avoided the specific requests to provide any support regarding the refusal to remove Taijuana Ryan's name from the paperwork.

97. Defendant has no legal justification to avoid these requests. It provided no responses at all to them.

98. As a direct and proximate result of Defendant's actions, Plaintiff Ryan and Plaintiff Malone have incurred legal fees and costs associated with preparing and mailing the Second QWR.

99. As a direct and proximate result of Defendant's actions, Plaintiff Ryan and Plaintiff Malone have suffered severe emotional distress, including but not limited to anxiety, stress, and sleepless nights.

100. As a direct and proximate result of Defendant's actions, Plaintiff Ryan and Plaintiff Malone have incurred the legal fees and expenses of bringing this lawsuit, and will incur legal fees and expenses to maintain this lawsuit.

## VI. FIRST COUNT – RESPA LOSS MITIGATION VIOLATIONS.

93. Plaintiffs incorporate all other paragraphs in this Complaint by reference as though fully rewritten herein.

94. Defendant's actions described in this Complaint constitute violations of RESPA, 12 U.S.C. § 2601, *et seq.*, and Regulation X, 12 C.F.R. § 1024.41.

95. On or about December 21, 2021, the Application was complete pursuant to 12 C.F.R. § 1024.41.

96. On or about December 21, 2021, the Application was facially complete pursuant to 12 C.F.R. § 1024.41(c)(2)(iv).

97. By failing to exercise reasonable diligence in obtaining documents and information to allegedly complete the application, Defendant violated Regulation X, 12 C.F.R. § 1024.41(b)(1).

98. By failing to provide Plaintiffs with the correct notices regarding their Application, Defendant violated Regulation X, 12 C.F.R. § 1024.41(b)(2)(i)(B).

99. By failing to identify what additional documents Plaintiffs needed to submit to make the Application complete, Defendant violated Regulation X, 12 C.F.R. § 1024.41(b)(2)(i)(B).

100. By failing to promptly, upon receipt, evaluate the Application to determine if it was complete, Defendant violated Regulation X, 12 C.F.R. § 1024.41(b)(2)(i)(A).

101. By failing to promptly request additional information and documentation from Plaintiffs, and allowing a reasonable opportunity for Plaintiffs to meet the request after the Application was facially complete, Defendant violated Regulation X, 12 C.F.R. § 1024.41(c)(2)(iv).

102. By failing to exercise reasonable diligence in obtaining documents and information not in Plaintiffs' control, Defendant violated Regulation X, 12 C.F.R. § 1024.41(c)(4)(i).

103. Defendant regularly fails to comply with RESPA and Regulation X in its procedures for evaluating and processing its borrowers' loss mitigation applications.

104. Defendant regularly fails to comply with RESPA and Regulation X in its procedures for administering foreclosure lawsuits it brings against borrowers.

105. Defendant has engaged in a pattern and/or practice of non-compliance with the requirements of RESPA and Regulation X.

106. As a result of Defendant's actions, Plaintiffs have and continue to incur actual damages, including but not limited to, costs associated with preparing and sending the Second QWR, and bringing this action.

107. As a result of Defendant's actions, Plaintiffs have and continue to suffer severe emotional distress, including anxiety, stress, and sleepless nights.

108. Due to these violations of RESPA and Regulation X, Defendant is liable to Plaintiff Ryan and Plaintiff Malone for actual damages to be determined at trial, additional damages in the amount of at least $2,000, plus attorney fees, and costs of the action, including pursuant to 12 U.S.C. § 2605(f), and all other relief as this Court deems just and necessary.

## VII. SECOND COUNT – RESPA QWR VIOLATIONS.

109. Plaintiffs incorporate all other paragraphs in this Complaint by reference as though fully rewritten herein.

110. Defendant's actions described in this Complaint constitute violations of RESPA, 12 U.S.C. § 2601, *et seq.,* and Regulation X.

111. The Second QWR is a "qualified written request," as that term is defined in 12 U.S.C. § 2605(e)(1)(B).

112. Defendant acknowledged receipt of the Second QWR on or about October 17, 2022.

113. By failing to adequately respond to the Second QWR, Defendant violated RESPA, including pursuant to 12 U.S.C. § 2605(e)(2) and 12 C.F.R. § 1024.36.

114. By failing to provide Plaintiffs with the information requested, Defendant violated Regulation X, including pursuant to 12 C.F.R § 1024.36(d).

115. By failing to conduct a reasonable investigation into the failure to remove Taijuana Ryan's name from the paperwork, Defendant violated Regulation X, including pursuant to 12 C.F.R. § 1024.36(d).

116. By failing to adequately respond to Plaintiffs' noted errors, Defendant violated Regulation X, including pursuant to 12 C.F.R. § 1024.35(e).

117. By failing to conduct a reasonable investigation into Plaintiffs' noted errors, Defendant violated Regulation X, including pursuant to 12 C.F.R. § 1024.35(e)(1).

118. Defendant regularly fails to comply with RESPA and Regulation X in its procedures for evaluating and processing its borrowers' loss mitigation applications.

119. Defendant regularly fails to comply with RESPA and Regulation X in its procedures for administering foreclosure lawsuits it brings against borrowers.

120. Defendant has engaged in a pattern and/or practice of non-compliance with the requirements of RESPA and Regulation X.

121. As a result of Defendant's actions, Plaintiffs have and continue to incurr actual damages, including but not limited to, costs associated with preparing and sending the Second QWR, and bringing this action.

122. As a result of Defendant's actions, Plaintiffs have and continue to suffer severe emotional distress, including anxiety, stress, and sleepless nights.

123. Due to these violations, Defendant is liable to Plaintiff Ryan and Plaintiff Malone for actual damages to be determined at trial, additional damages in the amount of at least $2,000, plus attorney fees, and costs of the action, including pursuant to 12 U.S.C. § 2605(f), and all other relief as this Court deems just and necessary;

## VIII. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Ryan and Plaintiff Malone respectfully pray that this Court:

A. Assume jurisdiction of this case;

B. Grant judgment in favor of Plaintiffs on all claims, and for the remedies sought in each claim;

C. Award Plaintiffs maximum damages on the Counts, including the maximum statutory damages available, the maximum economic and non-economic damages available, including actual, emotional, general, punitive, and other damages;

D. Award Plaintiffs actual damages to be established at trial, including pursuant to 12 U.S.C. § 2605(f) and with the appropriate multiplier;

E. Award Plaintiffs statutory damages in the amount of at least $2,000, plus attorney fees, and costs of the action, including pursuant to 12 U.S.C. § 2605(f);

F. Award Plaintiffs additional damages and costs;

G. Issue a judicial determination of the rights and responsibilities of the parties;

H. Issue an order directing Defendant to correct the paperwork for the Loan Modification Defendant provided to Plaintiffs in December 2021, by removing Taijuana Ryan's name from all documentation relating to same;

I. Issue an order directing Defendant to process and implement the terms of the Loan Modification Defendant provided to Plaintiffs in December 2021, upon receipt of the properly executed corresponding paperwork from Plaintiff Ryan and Plaintiff Malone;

J. Issue an order directing Defendant to correct any and all prior communications with any and all credit rating bureaus, reporting negative information on Plaintiff Ryan's and Plaintiff Malone's credit records, as it relates in any form to this foreclosure action;

K. Regarding Count One, award Plaintiffs damages, including but not limited to actual damages to be determined at trial, additional damages in the amount of at least $2,000, plus attorney fees, and costs of the action, including pursuant to 12 U.S.C. § 2605(f), and all other relief as this Court deems just and necessary;

L. Regarding Count Two, award Plaintiffs damages, including but not limited to actual damages to be determined at trial, additional damages in the amount of at least $2,000, plus attorney fees, and costs of the action, including pursuant to 12 U.S.C. § 2605(f), and all other relief as this Court deems just and necessary; and,

M. Award such other relief as the court deems appropriate.

Dated this 31st day of January, 2023.

Respectfully Submitted,
DOUCET CO., L.P.A.

*/s/ Marissa K. Varcho (0086242)*
Marissa K. Varcho (0086242)
655 Metro Place South, Suite 600
Dublin, Ohio 43017
Phone: (614) 221-9800
Facsimile: (818) 638-5548
marissa@doucet.law
*Attorney for Plaintiff Ryan and Plaintiff Malone*

## JURY TRIAL DEMANDED

Plaintiff Ryan and Plaintiff Malone respectfully request a jury trial on all triable issues.

Respectfully Submitted,
DOUCET CO., L.P.A.

*/s/ Marissa K. Varcho (0086242)*
Marissa Varcho (0086242)
655 Metro Place South, Suite 600
Dublin, Ohio 43017
Phone: (614) 221-9800
Facsimile: (818) 638-5548
marissa@doucet.law
*Attorney for Plaintiff Ryan and Plaintiff Malone*