## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**TRAVIS RYAN,** *et al.,*

            **Plaintiffs,**     **:**

                                 **Case No. 2:23-cv-484**

    **v.**                               **Judge Sarah D. Morrison**

                                 **Magistrate Judge Kimberly A.**
                                 **Jolson**

**FLAGSTAR BANK, FSB,**     **:**

            **Defendant.**

## OPINION AND ORDER

Travis Ryan and Megan Malone allege that Flagstar Bank, FSB (their mortgage servicer), mishandled their application for modification of their home mortgage loan in violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, and the RESPA implementing regulation known as Regulation X, 12 C.F.R. § 1024. The thrust of Plaintiffs allegations is that Flagstar mistakenly included Mr. Ryan's ex-wife, Taijuana Ryan, as a signatory on loan modification agreements and, despite numerous representations from Flagstar that it would remedy the mistake, Flagstar failed to do so for over nine-months resulting in emotional distress and financial harm to Plaintiffs.

Before the Court is Flagstar's Motion to Dismiss the Complaint for failure to state a claim. (ECF Nos. 11, 21, 23.) After Flagstar filed its motion, Plaintiffs sought leave to file an amended complaint, which could remove several allegations against Flagstar and amend others. (Motion to Amend, ECF No. 22; Proposed Am. Compl., ECF No. 22-1.) Flagstar opposes granting leave to amend on futility grounds,

making arguments similar to those raised in its motion to dismiss. (ECF No. 24.) Particularly at this early stage, leave to amend is freely given; therefore, Plaintiffs' Motion for Leave to File an Amended Complaint is **GRANTED**; the Clerk is **DIRECTED** to file Plaintiffs' Proposed Amended Complaint (ECF No. 22-1) on the docket.

Because the Amended Complaint does not affect the merits of Flagstar's Motion to Dismiss nor the arguments raised therein, the Court construes Flagstar's Motion as a Motion to Dismiss the Amended Complaint.

For the reasons set forth below, Flagstar's Motion is **GRANTED in part** and **DENIED in part.**

## I.    BACKGROUND

The following draws from the factual allegations in the Amended Complaint and documents incorporated into the Amended Complaint by reference.[1] Plaintiffs' factual allegations are considered true for purposes of the pending motion, but their legal assertions are not. *See Gavitt v. Born*, 835 F.3d 623, 639–40 (6th Cir. 2016).

---

[1] The Court can consider documents attached to Flagstar's Motion to Dismiss because each document is referenced in the Amended Complaint and is integral Plaintiffs' claims. *See Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001) ("If referred to in a complaint and central to the claim, documents attached to a motion to dismiss form part of the pleadings.") (citations omitted); *see also Weiner v. Klais & Co.,* 108 F.3d 86, 89 (6th Cir. 1997) ("[A] defendant may introduce certain pertinent documents [without converting a motion to one for summary judgment] if the plaintiff fails to do so. Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which it relied.") (citations omitted).

Plaintiffs purchased a home together in October 2018. (Am. Compl., ECF No. 22-1, ¶¶ 1, 19.) At the time, Mr. Ryan was still married to Taijuana Ryan, who signed the mortgage solely to release any interest she may have in the home. (¶¶ 1, 20, 23.) Mr. Ryan's divorce was finalized on or around February 2020. (¶ 25.)

In mid-2021, Plaintiffs applied for modification of their mortgage loan because Mr. Ryan had suffered a significant reduction in income.  (¶¶ 1, 28–30, 33) Over the next nine months, Plaintiffs were offered three different loan modification options, each with less favorable terms than the last:

| | Interest Rate | Monthly Mortgage Payment | Principal Balance | Deferred Claim | Mortgage Term | Ms. Ryan's Signature Required |
|---|---|---|---|---|---|---|
| December Offer | 3.125% | $2,405.16 | $303,401.49 | $67,77.67 | 30 years | Yes |
| April Offer | 4.750% | $2,769.52 | $320,386.23 | $58,142.67 | 30 years | Yes |
| August Offer | 5.375% | $2,723.53 | $320,386.23 | $77,796.50 | 40 years | No |

(¶ 78; *see also* December Offer, ECF No. 11-1, April Offer, ECF No. 11-2, and August Offer, ECF No. 11-3.)

Although Plaintiffs intended to accept the December Offer, they were unable to execute the loan modification agreement because Flagstar required Ms. Ryan's signature. (¶¶ 1, 35–36.) Plaintiffs immediately informed Flagstar that Ms. Ryan's signature should not be required, and Flagstar represented that it would address the issue. (¶¶ 39–40.) But Flagstar did not remove Ms. Ryan's signature from the loan modification agreement, and the December Offer expired. (¶¶ 1, 43–44; ECF No. 11-1, PAGEID # 74 (December Offer expired on January 4, 2022).)

3

The loan modification agreement included with the April Offer also required Ms. Ryan's signature. (¶ 50.) As before, Plaintiffs promptly informed Flagstar of the problem. (¶ 51.) Flagstar represented that it would address the issue and requested additional paperwork from Plaintiffs. (¶¶ 52, 56.) Plaintiffs complied and provided copies of the home deed and title and Mr. Ryan's divorce decree showing that Ms. Ryan had no interest in the home. (¶¶ 53–55.) Even so, Plaintiffs did not receive a corrected agreement, and the April Offer expired. (¶¶ 58–59; ECF No. 11-2, PAGEID # 102 (April Offer expired on April 25, 2022).)

Flagstar continued to request information and corrected documents from Plaintiffs through August 2022. (¶¶ 61–70.) By the time Flagstar provided Plaintiffs with a loan modification agreement that did not require Ms. Ryan's signature, Plaintiffs had retained counsel. (¶ 84; *see* August Offer, ECF No. 11-3.)

In September 2021, Plaintiffs' counsel sent Flagstar written notice ("the Letter") identifying several errors in the loan modification offers, including (1) Flagstar's inclusion of Ms. Ryan's signature in the December and April Offers, (2) the different interest rates included in the December and August Offers, and (3) the difference in the loan's principal balance reflected in the December and August Offers. (¶¶ 85, 87; *see also* The Letter, ECF No. 11-6.) The Letter also requested information and documents related to Plaintiffs' loan and their applications for loan modification. (¶ 86; *see also* ECF No. 11-6.)

In response to the Letter, Flagstar acknowledged that Ms. Ryan's signature should not have been required on any loan modification paperwork. (Flagstar's

4

Response, ECF No. 11-7, PAGEID # 193–94.) To remedy its error, Flagstar offered to honor the December Offer but required that Plaintiffs make a lump sum payment of $21,646.44 to cover the monthly payments that would have accrued had Plaintiffs accepted the offer in December. (*Id*.) If Plaintiffs could not afford the lump sum payment, Flagstar would honor the August Offer but required that Plaintiffs pay the $2,723.53 payment that would have been due in October 2022. (*Id*.)

Flagstar did not address whether it erred in offering different interest rates in the December and August Offers, but it explained that the offers included different principal balances because the past due balance on the loan increased between December 2021 and August 2022. (*Id*).

As for Plaintiffs' information and document requests, Flagstar provided Plaintiffs with some of the documents requested but stated that it was unable to honor their entire request because it was overbroad and unduly burdensome. (¶¶ 92–96; ECF No. 11-7.)

On January 31, 2023, Plaintiffs filed suit against Flagstar. On Count I, Plaintiffs assert RESPA violations based on Flagstar's alleged mishandling of the loan modification applications. On Count II, Plaintiffs allege RESPA violations based on Flagstar's response to the Letter.

Flagstar moves to dismiss both counts for failure to state a claim.

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007) (internal alteration and quotations omitted). A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The Supreme Court has explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted). The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Directv, Inc. v. Treesh*, 487 F.3d, 471, 476 (6th Cir. 2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 555).

## III.   ANALYSIS

RESPA is a consumer protection statute that regulates the real estate settlement process. 12 U.S.C. § 2601, *et seq.* It was enacted "to insure that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country." 12 U.S.C. § 2601(a). "Although the

'settlement process' targeted by the statute was originally limited to the negotiation and execution of mortgage contracts, the scope of the statute's provisions was expanded in 1990 to encompass loan servicing.'" *Marais v. Chase Home Fin. LLC*, 736 F.3d 711, 719 (6th Cir. 2013). "As a remedial statute, RESPA is construed broadly to effectuate its purposes." *Id.* at 719.

Regulation X builds on RESPA's requirements for loan servicers and is enforceable under section 6(f) of RESPA. *See also Becker v. PennyMac Loan Servs., LLC*, 583 F. Supp. 3d 1090, 1098 (S.D. Ohio 2022) (recognizing a private right of action under Regulation X). A borrower may recover actual damages resulting from the servicer's noncompliance with the regulation and statutory damages if the servicer has a pattern or practice of noncompliance. *See* 12 U.S.C. 2605(f).

A. **Count I—Plaintiffs state a RESPA claim based on Flagstar's lack of reasonable diligence in collecting documents and information necessary to evaluate their eligibility for loss mitigation.**

On Count I, Plaintiffs allege that Flagstar violated RESPA by failing to exercise reasonable diligence in obtaining documents necessary to complete their loan modification applications before it made the December and April Offers.

A mortgage servicer's obligation to collect loss mitigation information before evaluating a borrower's eligibility for loan modification is outlined in Section 1024.41 of Regulation X. Upon receiving a timely[2] and complete application for loan

---

[2] To be timely, a borrower must apply more than 37 days before a foreclosure sale. 12 C.F.R. § 1024.41(c)(1). If no foreclosure sale is scheduled, an application is considered timely submitted. *See* Consumer Financial Protection Bureau, 12 C.F.R. § Pt. 1024, Supp., Comment for 1024.41(b)(2) (Aug. 31, 2021), available at https://perma.cc/SZF4-5SJP.

modification, servicers must evaluate a borrower for all available loss mitigation options. 12 C.F.R. § 1024.41(c)(1)(i). The servicer's evaluation must be based on a complete application, meaning that no additional information is needed for the servicer to assess a borrower's eligibility for loss mitigation. 12 C.F.R. § 1024.41(b)(1); 12 C.F.R. § 1024.41(c)(2)(i). Thus, before making a final determination on loss mitigation, servicers must "exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application." 12 C.F.R. § 1024.41(b)(1). If a servicer discovers that it needs additional information after its initial review, it must "promptly request missing information or corrected documents" and "give the borrower a reasonable opportunity to complete the application." 12 C.F.R. § 1024.41(c)(2)(iv).

A "typical" reasonable diligence claim "is that a servicer erroneously requested documents or information it already had or should not have otherwise requested." *Hurst v. Caliber Home Loans, Inc.,* 44 F.4th 418, 425–26 (6th Cir. 2022) (a servicer who makes misleading or conflicting requests may lack reasonable diligence). But a servicer also lacks reasonable diligence if it fails to promptly request necessary documents and information from a borrower. *Id.*

Defendants argue that *Blair v. PNC Bank, N.A.*, No. 1:21-CV-766, 2022 WL 2986868, at *3 (S.D. Ohio July 28, 2022) (Black, J.) controls the outcome here, but that case did not involve reasonable diligence claim. In *Blair*, PNC offered a loan modification agreement that required a signature from the borrower's ex-husband,

8

who had no ownership interest in the home. *Id.* at *1. When her ex-husband refused to sign, the borrower could not accept PNC's offer before it expired. *Id.* She sued PNC asserting that it violated RESPA by offering an improper loss mitigation option. *Id.* at *3. However, the borrower did not dispute that PNC evaluated her complete application. *Id.* at *3. So, rather than challenging PNC's evaluation process, the *Blair* borrower took issue with the terms PNC offered. *Id.* at *3. Because RESPA "gives servicers plenary discretion to set the terms of loan modification agreements," the Court was left with "no statutory basis to proclaim that PNC made a loan modification offer contrary to law" and it dismissed the claim. *Id.*

Plaintiffs' claim is distinguishable from the claim dismissed in *Blair*. Rather than pinning their claim to the terms Flagstar offered, Plaintiffs complain about Flagstar's process to evaluate their eligibility for loan modification and allege the following: In December 2021, Flagstar knew that information regarding Mr. Ryan's marital status and Ms. Ryan's lack of interest in the home was necessary to complete Plaintiffs' loan modification application.[3] (¶¶ 34–39.) Flagstar made no effort to obtain such information until April 2022, then it continued to request additional information and corrected documents from Plaintiffs until August 2022. (¶¶ 50–53, 61–70.) Plaintiffs were financially and emotionally harmed by Flagstar's

---

[3] Although Flagstar disputes that this information was necessary to evaluate Plaintiffs' eligibility for loss mitigation, the Court must draw all inferences in Plaintiffs' favor. Because Flagstar requested documents related to Mr. Ryan's marital status and Ms. Ryan's interest in the home, it is reasonable to infer that Flagstar considered such information necessary to its loss mitigation evaluation.

delay in collecting the information necessary to evaluate their eligibility for loss mitigation. (¶¶ 98–100.) Taking these allegations as true, Plaintiffs have stated a reasonable diligence claim under RESPA.

Accordingly, Defendants' motion to dismiss is **DENIED** on Count I.

### B. Count II—Plaintiffs state a RESPA claim based on some aspects of Flagstar's response to the Letter.

On Count II, Plaintiffs assert that Flagstar did not comply with RESPA when it responded to identified errors and requests for information included in the Letter.[4]

RESPA and Regulation X regulate how loan servicers respond to qualified correspondence received from borrowers. A qualified written request ("QWR") is written correspondence relating to loan servicing that either (1) identifies a potential error with a borrower's account or (2) requests documents or information from the servicer. 12 U.S.C. § 2605(e)(1)(A)–(B).

A QWR that identifies potential errors in a borrower's account is a notice of error ("NOE"). 12 C.F.R. § 1024.35. When a servicer receives a NOE, it must respond either by making appropriate corrections to the borrower's account or by providing the borrower with a written explanation for why the servicer believes no error occurred after it conducted a reasonable investigation. 12 C.F.R. § 1024.35(e)(i)(A)–(B); 12 U.S.C. § 2605(e)(2)(A)–(B). The servicer must also provide contact information for the borrower to obtain additional assistance. *Id.*

---

[4] In their response, Plaintiffs argue that Flagstar also provided inadequate responses to other communications. (ECF No. 21, PAGEID # 361–63.) However, Count II is based solely on Flagstar's response to the Letter. (¶¶ 116–30.)

The other type of QWR is a request for information ("RFI"). 12 C.F.R. § 1024.36. When a servicer receives a RFI, it must provide the borrower with either the information requested or an "explanation of why the information requested is unavailable or cannot be obtained by the servicer" after a reasonable investigation, and share contact information for further assistance. 12 U.S.C. § 2605(e)(2)(C); 12 C.F.R. § 1024.36(d)(i)–(ii).

Regulation X carves out an exception for overbroad and unduly burdensome RFIs. 12 C.F.R. § 1024.36(f)(iv). An overbroad RFI seeks an "unreasonable volume of documents or information" from a servicer. *Id*. A RFI is deemed unduly burdensome "if a diligent servicer could not respond. . .without either exceeding the maximum time limit [in most cases 30 days] or incurring costs (or dedicating resources) that would be unreasonable in light of the circumstances." *Id*. If a servicer receives an overbroad or unduly burdensome RFI, it is only required to comply with RESPA response requirements to the extent it can "reasonably identify a valid information request within [the] submission." *Id*.

Here, the Letter identified three potential errors and requested documents and information related to loss mitigation and loan servicing.

With regard to the alleged NOE violations, Flagstar argues that it complied with RESPA by removing Ms. Ryan's signature from the loss mitigation paperwork and offering to further remedy its error by honoring the December and August Offers. (ECF No. 11, PAGEID # 67–68; *see also* Response to the Letter, ECF No. 11-7.) Plaintiffs argue that the response was still inadequate because Flagstar

11

"completely failed" to explain why it required Ms. Ryan's signature on the December and April Offers and did not fully address the other noted errors. (ECF No. 21, PAGEID # 363.)

Flagstar adequately responded to the erroneous inclusion of Ms. Ryan on the December and April Offers—it corrected the error, so it did not owe Plaintiffs an explanation for why the error occurred. However, Plaintiffs also complained about the different interest rates and principal balances in Flagstar's offers. In its response, Flagstar adequately explained that the different principal balance reflected in each offer was caused by increases to the loan's past due balance between December 2021 and August 2022. (ECF No. 11-7, PAGEID # 193–94.) But Flagstar did not address whether it investigated the offered interest rates or explain why its decision to offer different rates was not an error. (*Id.*) Thus, Plaintiffs stated a RESPA claim based on Flagstar's response to their NOE regarding interest rates but have failed to do so with respect to the Ms. Ryan's signature and the loan's principal balance.

As for the alleged RFI violation, Flagstar argues that it appropriately responded to Plaintiffs' RFI, which was overbroad and unduly burdensome. (ECF No. 11, PAGEID # 68–71.) Even assuming that Plaintiffs' request was overbroad and unduly burdensome, whether Flagstar reasonably identified and replied to valid requests within the Letter is an issue ill-suited for resolution at this stage. Thus, Plaintiffs' allegations that Flagstar did not provide all required documents

and information is sufficient to state a RESPA claim based on Flagstar's response to their RFI.

Accordingly, Flagstar's motion to dismiss Count II is **DENIED** as to the RFI violation and the NOE violation based on Flagstar's offered interest rates and is **GRANTED** as to the NOE violations based on the loan's principal balance and Ms. Ryan's signature.

## IV.    CONCLUSION

For the reasons stated herein, Plaintiffs' Motion for Leave to Amend the Complaint is **GRANTED**. (ECF No. 22.) The Clerk is **DIRECTED** to file Plaintiffs' Proposed Amended Complaint (ECF No. 22-1) on the docket. Flagstar's Motion to Dismiss is **DENIED** on Count I and is **GRANTED in part** and **DENIED in part** on Count II. (ECF No. 11.)

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**